894 F.2d 401
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joe CARPENTER; Landmasters, Inc., Plaintiffs-Appellants,
and
Lanny Thornburg; LTN Contracting, Inc., Plaintiffs,
v.
R.A. BARNHART, Administrator, Federal Highway
Administration, U.S. Department of Transportation; Kenneth
L. Bellamy, Division Administrator, Federal Highway
Administration, U.S. Department of Transportation; James E.
Harrington, Secretary, N.C. Department of Transportation;
George E. Wells, Highway Administrator, N.C. Department of
Transportation; Samuel K. Skinner, Secretary of
Transportation, Defendants-Appellees.
 No. 88-3578.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 1, 1989.
Decided: Jan. 16, 1990.
 
 Geoffrey Stephen Parker (William O. Miller, Robert B. Baker, Jr., Southeastern Legal Foundation, Inc., on brief), for appellants.
 James P. Turner, Acting Assistant Attorney General (Lacy H. Thornburg, Attorney General; Grayson G. Kelley, Assistant Attorney General; Roger Clegg, Deputy Assistant Attorney General; David K. Flynn, Mark L. Gross, Department of Justice, on brief), for appellees.
 Before WIDENER and WILKINSON, Circuit Judges, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This case involves a challenge to the constitutionality of a set-aside program established by the state of North Carolina as a prerequisite to receipt of federal highway funds under Section 105(f) of the Surface Transportation Assistance Act of 1982, Pub.L. No. 95-28, 91 Stat. 116, its successor Section 106(c) of the Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub.L. No. 100-17, 101 Stat. 144, and the Department of Transportation's implementing regulations, 49 C.F.R. Part 23 (1988). Plaintiffs Joseph Carpenter and his non-minority landscape business, Landmasters, Inc., brought suit alleging that the federal/state set-aside scheme violates the United States Constitution, numerous federal statutes, and the North Carolina Constitution by depriving him of a meaningful opportunity to bid on federally-funded state highway projects solely on the basis of race. The district court upheld the constitutionality of the federal statutes and the federal and state implementing regulations.
 
 
 2
 Our review of the record discloses that plaintiffs failed to show that the highway funding program caused them any injury. We conclude that plaintiffs lack standing to bring this suit, and accordingly we dismiss the case without reaching the merits.
 
 I.
 
 3
 The Surface Transportation Assistance Act of 1982, Pub.L. No. 95-28, 91 Stat. 116, and its successor, Section 106(c) of the Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub.L. No. 100-17, 101 Stat. 144 (collectively referred to as "the Act"), are federal authorization programs providing funds to states for interstate highway construction projects. Under the Act, a recipient state must expend not less than 10 percent of the federal funds on disadvantaged business enterprises (DBE's)--small business concerns owned and controlled by socially and economically disadvantaged individuals. Federal regulations promulgated pursuant to the Act define "disadvantaged business" as an enterprise at least 51% owned and managed by socially and economically disadvantaged individuals. 49 C.F.R. Sec. 23.62 (1988). The category of "disadvantaged individuals" is "rebuttabl[y] presum[ed]" to include "women, Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, [and] Asian-Indian Americans." Id. The regulations require recipient states to set DBE contract goals, id. at Secs. 23.41, 23.45, and to establish a procedure to allow third-party challenges to a firm's status as a DBE, id. at Sec. 23.69. The federal government can withhold highway funds from a recipient state that fails to comply with the requirements described in the regulations. Id. at Secs. 23.68(e)(1) & (2).
 
 
 4
 The North Carolina set-aside program at issue here was implemented in 1982 to comply with the federal regulations. See North Carolina Department of Transportation Division of Highways, Program for Participation by Minority Business Enterprises in the North Carolina Department of Transportation's Federally Assisted Programs, October, 1985 at i. As required by the federal regulations, the state program presumed that certain minority groups are disadvantaged, established DBE contract goals, and provided for third-party challenges to DBE certification.
 
 
 5
 On April 3, 1985, plaintiff Joe Carpenter, his landscape contracting firm Landmasters, Inc., and two other parties[1] filed suit in the United States District Court for the Eastern District of North Carolina against the U.S. Department of Transportation as well as state officials responsible for administering federally-assisted state highway construction projects in North Carolina. Plaintiffs alleged that the North Carolina set-aside program was a racial quota which denied them the opportunity for meaningful participation in the bidding process employed by the state to award contracts for the construction of public highways. They sought declaratory and injunctive relief under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Process and Equal Protection Clauses of the Constitution of the State of North Carolina, and 42 U.S.C. Secs. 1981, 1983, 2000(d), and 2000(e).
 
 
 6
 In an order dated March 9, 1987, the district court granted defendants' motion for partial summary judgment and upheld the facial constitutionality of the Act and its federal and state implementing regulations. On September 29, 1987, the government moved for summary judgment on plaintiffs' remaining "as applied" challenge, arguing that plaintiffs were not injured by the DBE scheme and thus lacked standing to claim that it was unconstitutional in its application to them. "Affording plaintiffs the benefit of the doubt, and in the interest of judicial economy," the court denied this motion in order to get all the evidence on the record. Following a three-day bench trial, the district court upheld the DBE program's constitutionality. The court first noted the "very real question whether these plaintiffs even have standing to assert the constitutional challenge." It assumed standing, however, and concluded that the DBE program was constitutional as applied to plaintiffs because they failed to prove by competent evidence that North Carolina's DBE program had a disproportionate impact on them.
 
 II.
 
 7
 Plaintiffs lack standing to bring this constitutional challenge because they failed to show any injury caused by the DBE program. The judgment of the district court is therefore vacated, and this case is remanded with directions that it be dismissed.
 
 
 8
 The standing requirement derives from Article III's limitation of the federal judicial power to "cases" and "controversies." Valley Forge Christian College v. Americans United For Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). The federal judicial power
 
 
 9
 is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments ... "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy."
 
 
 10
 Id. at 471 (quoting Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345 (1892)). The standing requirement restricts the exercise of federal judicial power "to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." Id. at 472 (quoting Flast v. Cohen, 392 U.S. 83, 97 (1968)). It ensures that cases will be decided "in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge, 454 U.S. at 472.
 
 
 11
 To satisfy the standing requirement, a plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Id. at 472 (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979)). The injury must be "distinct and palpable," Warth v. Seldin, 422 U.S. 490, 501 (1975), not "abstract" or "conjectural" or "hypothetical." Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983). Moreover, "[t]he injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision." Allen v. Wright, 468 U.S. 737, 751 (1984) (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41 (1976)).
 
 
 12
 The district court rejected the merits of plaintiffs' "as applied" challenge because plaintiffs failed to show "that they have suffered economic injury as a result of the implementation in North Carolina of a DBE program" and thus "failed to prove that they suffered a cognizable injury for which the relief they seek--invalidation of the DBE program--may provide redress." These conclusions should have precluded the district court from ruling on the merits because they clearly demonstrate that plaintiffs lack standing to bring this suit.
 
 
 13
 The district court found that Carpenter failed to put on any evidence demonstrating that he suffered any economic loss caused by the DBE program. Carpenter had not even regularly bid on North Carolina highway construction projects since 1983 or 1984, and never identified any specific contracts that were denied him due to the DBE program. The court concluded that "[f]rom the implementation of the DBE program in 1982, until the end of the fiscal year 1984, neither Carpenter nor Landmasters suffered any adverse economic effects which were attributed at trial by competent evidence to the DBE program."
 
 
 14
 Indeed, far from demonstrating injury, it appears that, if anything, plaintiffs benefitted from the DBE scheme. The district court found that Carpenter and his company obtained more work on federally-funded state highway construction projects in the two years after implementation of the DBE program in 1982 than before implementation. Moreover, one reason that Carpenter had not regularly bid on projects since 1986 was to avoid competing with his wife, who owns a DBE and was bidding on similar highway projects. Because Carpenter's company rented equipment to his wife's enterprise, he indirectly gained from the DBE program. As the district court concluded, "[i]f anything, plaintiffs have prospered since implementation of the DBE program in 1982."
 
 
 15
 Plaintiffs contend that despite the absence of any evidence in the record indicating that they were harmed by the DBE program, they have standing based on "their loss of opportunities to contract with a government agency or department." This claim, which amounts to no more than an assertion of hypothetical loss of business, rings hollow in light of Carpenter's failure to submit bids. Plaintiffs' contention that the DBE program excessively burdens them because they are specialty contractors--a job classification disproportionately satisfied by minority firms--is similarly unavailing, because plaintiffs once again failed to bring forth concrete evidence of injury to them as specialty contractors.
 
 
 16
 We do not suggest that a non-minority contract bidder situated similarly to Carpenter can never allege cognizable injury from a set-aside scheme. We need not articulate the precise minimal showing needed to establish standing, for here plaintiffs' claims clearly amount to no more than an abstract grievance about the DBE program. Federal courts are not "publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." Valley Forge, 464 U.S. at 473. The utter absence in the record of real, concrete injury to plaintiffs leaves us with no "controversy" to adjudicate and renders us without authority to rule on the merits of the constitutional claims. Accordingly the decision below is vacated and the action is remanded with directions to dismiss.
 
 
 
 [1]
 These parties were eventually dismissed for failure to prosecute under Fed.R.Civ.P. 41(b)